The next case for argument is 19-2007, Laird Technologies v. Parker Intangibles. Mr. Manzo, whenever you're ready. Good morning, Your Honors. Good morning. May it please the Court. I hope my volume is appropriate. I would like to focus this morning on two of the main errors in this case. One of them is factual, the other one is legal. On the factual side, the Board's finding that the prior art did not disclose dispensing a fully cured product with no appreciable further curing is not supported by substantial evidence. Because regardless of whether our references, like Vias, also show dispensing material before it is finished curing, it definitely showed dispensing after it is finished curing. Moreover, even if the Board's finding that Vias was ambiguous, if that were correct, and we say it is not, because Vias clearly disclosed dispensing after curing, the Board failed to conduct a proper obviousness analysis of whether it would have been obvious to a person of ordinary skill in the art to dispense after curing. Well, here's the problem I have with the case. That's not to say how any one of us, if we were hearing this case in the first instance as backbinders, would have gone. But the Board here obviously had a conflicting expert, people saying different things. And I'll just tell you straightforwardly that I think it's very difficult under substantial evidence review to dislodge that. When there's a conflict in the testimony, the Board was trying to get to the bottom of it the best it could in terms of what the prior art disclosed. And as you say, it was, in their view, at best, ambiguous. So I guess I'm looking for some guidance from you as to how, as I said, on substantial evidence review, we are in a position to review the nuances of the prior art and dislodge the Board's conclusions in that regard. Thank you, Your Honor. I have a twofold response. First is that the Board pretty much ignored explicit disclosure in Column 3 of the Vias Patent at Appendix Page 2140. It did not discuss that. But second, on obviousness, I will base my discussion on the admissions of both counsel, I mean of both experts. Parker's expert and Laird's expert are in agreement that a supplier would not send a partially cured mixture to a user for dispensing. And they both agree that's commercially unacceptable. So in this case, even if Vias is ambiguous, it is, the Board also found... Well, this is Judge Clementer. Why is that relevant to whether a prior art reference teaches that its reference product doesn't have further appreciable curing after dispensing? And there are lots of patents that issue, I believe, sir, that have no commercial value. Your argument, I believe, is that, well, these products wouldn't have any commercial value if they had further appreciable curing after dispensing. So what? Why is that relevant to what Vias or NUGEN teach? Vias does teach achieving full cross-linking. And he says so in Column 3 at Appendix Page 2140. Hang on a second, I've got my appendix. On what page is it, sir? 2140, 2140, Column 3. Okay. 2140. Yes, 2140. Column 3, what line? The bottom paragraph. And specifically, line 58. Which line, specifically? Line 58, Your Honor. Just to... Just to briefly review this, in the first paragraph under the... That's talking about whether certain temperatures, right, would interfere with full cross-linking. That's not saying that the product is necessarily fully cross-linked. I think that this paragraph... The first paragraph under the formula says there was a problem with falling flakes. No, no, why don't you stick with this? This was your slam-dunk winner, Column 3 argument. I'm just testing you on it. I appreciate that. So in this bottom paragraph... So how are you doing with the test? I don't read line 58 to say that the product is necessarily fully cross-linked. It says if you heat it up enough, you can interfere with it. Am I wrong? Yes, and then he goes on to explain how he avoids and solves that problem. That's the remainder of the paragraph. So he's... Solves what problem? Vyas is explaining in that paragraph how he overcomes the problem of interference with full cross-linking of the polymer gel. And he is therefore clearly teaching that he achieves... When you say clearly teaching, that clearly is a really strong word. He's saying if you want to interfere with full cross-linking, heat it up too much. I apologize. I don't read his claim to have a heat limitation in it. Do you? No, I do not read the claim that way. So your word clearly is a too strong a word. I apologize then, Your Honor. You don't have to apologize if you agree or disagree with me. All I'm doing is you came forward with a LeBron James slam dunk winning basket at the buzzer, and I called you on it, which I think is fair. Fair enough, Judge. I think the slam dunk hit the rim and didn't go in, if I'm not mistaken. Well, I'm sorry. Because there's no heat limitation in the claim. The question is what would this teach a person skilled in the art? And there is agreed evidence that... And that's a fact question under the law. And the board heard your argument and came out against you. The board never conducted a proper obviousness analysis. Well, let me ask you about that. Yeah, but I mean, just to sort of tie Judge Clevenger's argument in, I mean, A through 12 through 17 seems to me a very detailed analysis citing to what the about bias, citing to what the expert said, the testing results, and all of this. So I'm not seeing that board... So what is improper about the analysis, the fulsome analysis, which it appears to me, with regard to evaluating what the reference says, what the various experts said about the reference? It seems quite fulsome to me. And you may disagree with the outcome, but point to me what in there is so bad, so wrong, so contrary to what our legal standards are that we would have a basis to reverse. The board sought an express statement of dispensing a fully cured product and said that bias was silent on that. But it is absolutely incontrovertible. And the board found that column two says that in a cured state, this mixture is dispensable. Why don't you tell me, pull up the board's opinion. The analysis is, I think, if you correct me if I'm wrong, 12 pages, appendix 12 through 17. And in that, they have several paragraphs going on in detail and conclude that it was an ambiguous disclosure. Yes, Your Honor. This analysis fundamentally reads as a section 102 analysis, not as a section 103 analysis. The board says at the top of page 14, appendix page 14, the very last sentence. Go ahead, you can finish your answer. It says bias itself is silent on this issue. It is very clear from column two that a person ordinarily skilled in the art would know and is taught that the bias composition is dispensable when cured. And column three of bias tells the poseta that he is trying to achieve full cross-linking. Now, armed with that knowledge and the admissions of the opposing experts who are in agreement, there are only two choices. You either send a product to a customer that is fully cured or you send one that is not cured at all. And it would have been absolutely routine to relieve the user from the burden of mixing together the five parts that bias mixes together and send the user a fully mixed, fully cured product. Those are the only two choices, and the experts agree on that. The board never took up that question. It only considered whether bias explicitly discloses dispensing something that is fully cured before dispensing. It only talked about whether bias does or does not disclose, and it says it's ambiguous. Well, the problem is even if it is ambiguous, there is still a disclosure in bias that you can have it cured and be dispensable. And that is the part on which we rely. The board never discusses that. It never conducted a full obviousness analysis. Well, let's save the remainder of your rebuttal until we hear from the other side. Thank you, Your Honors. Thank you. Mr. Loveson, when you're ready. Thank you, Your Honors. The board's fact findings regarding bias in EIN are supported by substantial evidence and support affirmance. And I think the court identified the issues with Laird's argument that on appeal, Laird is offering disagreements with the board's findings, asking the court to reweigh evidence, arguing the record supports findings that the board did not make, and offering arguments that were not presented to the board or waived. And so this is not going to meet the standard of review. The board here carefully weighed the evidence, including the prior art references, competing expert testimony from both parties, Laird's test evidence, and was entitled to make the findings that it did on bias in Nguyen. I would like to respond to Laird's counsel. Excuse me. This is Judge Stoll. I just wanted to ask you, I just heard the argument being made by the appellant that the board was really looking at this discussion at page A12 to 16 of the record, was really looking at this as whether VF disclosed the limitation more in an anticipation 102 sense and wasn't considering the obviousness of the disclosure in VF and whether VF suggested this disclosure. What's your response to that? Well, you know, I disagree with that characterization. The board was conducting a 103 analysis, and I think it's important to look at what Laird argued in its petition for obviousness, and that's at appendix 133 for bias. And I'll read that. Because bias's mixture is cross-linked and cured before dispensing, it would not exhibit further appreciable curing thereafter. It is already cured. This terse argument on this claim feature that the board found was dispositive was Laird's choice. Their position in the IPR on does not exhibit further appreciable curing was absolute. It was a material is cured or it is not, or a material is cross-linked or it is not. So bias is... Laird relied solely on bias for the material properties of the compound recited in claim 1 of the 192 patent, and brought in a secondary reference, Kalaninsky, for the teaching of dispensing via an orifice. So the obviousness case that Laird put before the board was very specific, and the board looked at the argument on bias and rejected Laird's position. And I think the record supports that finding. The board was entitled to weigh the competing expert testimony and credit Parker's expert, and that's entitled to deference. Thank you. I would like to turn to the admissions that Laird mentioned in its case in chief, and that really turns on a hypothetical question that Laird asked Parker's expert, Dr. Gattro, and it's quoted at red brief 29, and this testimony happens to be at appendix 2488 and 2489. And this testimony about, as a general proposition, how a manufacturer would not want to deliver product to customers in varying states of cure, Dr. Gattro agreed if the product was inconsistent to different customers. And there's several problems with this testimony, the way that Laird is heavily relying on it on appeal. First, the board explicitly considered and weighed this testimony in its analysis at appendix 12 and 14, and for Laird now to rely heavily on it is asking the court to re-weigh the evidence. But on the substance, bias does not describe how its material is provided to an end user. Their expert, Hill, admitted that. There's also no teaching in bias about its material being a one-part system. Hill admitted that as well. This is at appendix 3885 and 3857. So it's this idea that the customer gets the biased material in a single tube and is ready to use it. And so all of Laird's arguments about commercial applicability presume that there's a teaching that this is going to be a single-part system to a customer, and it's just not there. Parker's expert agreed that that bias does not describe providing an end user with a fully mixed composition. And so that's the problem, not only with this heavy reliance on what Laird is saying as an admission, but also with these scenarios that Laird pursues in its briefing, that there's only four of them and that they only point to Laird winning the case. They all, again, presuppose a manufacturer and a customer and presuppose that bias teaches a one-part system. Mr. Lobson, this is Jeff Clever. Could I ask a question for a point of information, please? As I understand the claim in the 192, cured or fully cured means that the material after dispensing doesn't exhibit further curing, but it provides that a fully cured product can still develop further curing as they normally develop upon aging. So there seems to be a concession in the definition that although something might be viewed as cured, it can have further curing due to aging. Am I correct about that? Yes, Your Honor. The board's construction is at Appendix 7 and relies on definition.  My question is, how do you decide if there's additional curing, whether it's as a result of aging or otherwise? How is a person who's got a product who's a competitor trying to decide whether or not if you have some further curing, is it due to aging or otherwise? How do you know? Well, Your Honor, I think you'd look at the text of the 192 patent and look at the curing chemistry. What kind of curing occurs during aging? As the material proceeds through time, right, it's an oxidation reaction. That would be with respect to aging. If we look at heat, for example, during thermal cycling, which Nguyen is one of the references that describes that, that would not be at room temperature and that would not be a normal reaction through oxidation. And so I would like to go back to the board's construction of cured and does not exhibit further appreciable curing. You know, they're not challenged in a meaningful way in this appeal. Laird did not offer a construction of does not exhibit further appreciable curing. Laird agreed with the definition of cured in the specification in its petition. And so we are here with the board's construction being unchallenged in this appeal. Okay. Thank you. Thank you. I would like to emphasize another fact finding that the board made in its analysis at 1214. This idea that curing is not a binary process, it's a progression. And that is at appendix 14 and 15. And that is robust Laird's position in the IPR that cured means does not exhibit further appreciable curing. Cross-linked means does not exhibit further appreciable curing. And Laird doesn't challenge that technical fact finding as lacking substantial evidence. And the board, you know, in its analysis weighed the evidence. It explicitly noted some evidence supported Laird's position that cured means does not exhibit further appreciable curing. And it noted evidence supporting the opposite view that cured does not mean does not exhibit further appreciable curing. So again, the board was entitled to weigh this testimony and make the fact finding that Laird did not prove his case with respect to bias in Nguyen. Anything further? So, Your Honor, if there are no questions with respect to Nguyen or simultaneous invention, I'd rest on the briefing for those issues. And I would briefly touch on Laird's 28J letter. They submitted that letter post-briefing citing two cases which we think are distinguishable. The Uber case involved a person of skill and the arts' motivations to combine certain teachings. And there, there was no dispute about what the reference is taught. Whereas here, we're dealing with the issue of whether a prior art reference teaches a certain claim feature and the knowledge of a person of skill and the art in view of that teaching. And the other case cited by Laird, the TCP case, that case involved a claim construction error in an anticipation analysis. And that's unlike the case here where we've discussed the claim construction and Laird has weighed challenging the board's explicit claim construction of a cured and does not exhibit further appreciable curing. So, if there are no further questions for the court, we submit that the board's judgment should be affirmed. Thank you. Mr. Manzo, you've got some rebuttal time. Thank you, Your Honors. It seems here that column three talks about how to avoid the interference with full cross-linking in bias. The board claim construction says curing means no more cross-linking and other things, polymerization, vulcanization. But when there's full cross-linking and there's no more cross-linking, the last element of the claim is met. Now, that taught the procita that you can't be sending products. Well, excuse me, that taught the procita that bias teaches a fully cured product. Now, if there's ambiguity about when bias dispenses, that's one thing. But it is beyond challenge, I think, that bias teaches how to avoid the interference with full cross-linking. The evidence after that is undisputed. The experts are in agreement. And it doesn't matter whether bias says it's a one-part system or a two-part system. The question is, what would this disclosure have meant to a person ordinarily skilled in the art? I don't have to show an identical disclosure in the reference. The procita is not an automaton in the words of KSR. And especially in this case, where there are only two choices that are open to the procita. Either the procita sends a fully cured product, which means no more full, which means it's fully cross-linked, or he sends a kit. And there are many reasons not to send a kit. You're putting the burden on the user to blend these five things together in a certain way and come out with a certain product. The board never addressed that. It is true that the board noted that the experts did agree on some things, but it never conducted a proper obviousness analysis. And that is a reversible error of law. Okay. That concludes. Did you have another point to make? No. You concluded? All right. I can give you the citations, if you wish, to the record of where the experts are in agreement, if you want to jot them down. I assume it's in your brief. Of course it is. Blue brief at page 47 to 48. Okay. Thank you. We thank both sides and the case is submitted.